IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR No. 6-97 |
| | ) CV No. 16-795 |
| DEION LAMONT WILSON | |

**OPINION AND ORDER**

**SYNOPSIS**

On September 7, 20016, a jury convicted Defendant of violating 18 U.S.C. §§ 922(g)(1) and 924(e)(1). On December 8, 2006, Defendant was sentenced to a term of imprisonment of 262 months, followed by a term of supervised release.[1] His sentence was based, in part, on the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Before the Court is Defendant's Motion pursuant to 28 U.S.C. § 2255, in which he contends that his sentence is invalid in light of Johnson v. United States, 135 S. Ct. 2551 (2015). For the following reasons, Defendant's Motion will be granted, and the matter scheduled for resentencing.

**OPINION**

**I.     APPLICABLE STANDARDS**

Relief is available under Section 2255 only under exceptional circumstances, when the claimed errors of law are "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424 (1962). A district court need not hold an evidentiary hearing on a Section 2255 motion if the motion, files, and records show conclusively

---

[1] This matter was transferred to my docket from Judge Fischer's on December 1, 2016. Prior to Judge Fischer, Judge McVerry presided over the case. The Court obtained a paper copy of Defendant's file, and has had the opportunity to review documents that do not appear in the electronic record.

that the defendant is not entitled to relief. United States v. Ritter, 93 Fed. Appx. 402 (3d Cir. 2004). In this case, a hearing is unnecessary, and the Motion will be disposed of on the record.

**II. DEFENDANT'S MOTION**

In this case, the Presentence Report ("PSR") identifies the following convictions, in addition to a conviction for possession with intent to deliver cocaine, as the bases for an ACCA determination: aggravated assault, at Allegheny County Court of Common Pleas ("Common Pleas") Docket No. 199212035; robbery at Common Pleas Docket No. 199403301; and robbery at Common Pleas Docket No. 199403299.

The sentencing Court, without pertinent discussion, adopted the findings of the PSR and sentenced Defendant accordingly. Defendant does not now contest the Court's reliance on the drug offense, but argues that the remaining offenses are no longer valid predicates.[2] The Government argues to the contrary, and urges that both aggravated assault and robbery qualify under ACCA's "force" clause. In this context, the Government bears the burden of demonstrating that an ACCA sentence is supported on grounds other than the now-invalid residual clause. See, e.g., United States v. Smith, No. 92-146, 2016 U.S. Dist. LEXIS 113484, at *6 (W.D. Pa. Aug. 25, 2016).

**A. Assault**

The parties agree that Defendant's aggravated assault conviction involved a violation of 18 Pa.C.S. § 2702(a)(1), obviating the need to delve into divisibility, or which statutory subsection undergirds the offense. Although the Government's arguments to the contrary are well-taken, at this time, I decline to depart from those decisions that have found that a violation of Section 2702(a)(1) is not a qualifying predicate offense for ACCA purposes. United States v.

---

[2] I decline to consider the predicate status of any prior convictions, such as Defendant's conspiracy conviction, that was not obviously relied on at sentencing. See United States v. McColley, No. 7045, 2016 U.S. Dist. LEXIS 38760 (W.D. Pa. Mar. 24, 2016).

2

Fisher, No. 1-796, 2017 U.S. Dist. LEXIS 60825, at **10-17 (E.D. Pa. Apr. 21, 2017); United States v. Weygandt, 9-324, 2017 U.S. Dist. LEXIS 29251, at * (W.D. Pa. Mar. 2, 2017);[3] United States v. Harris, No. 6-268, 2016 U.S. Dist. LEXIS 117070, at **42-43 (M.D. Pa. Aug. 31, 2016).

### B. Robbery

#### a. Predicate Offense

Because his aggravated assault conviction cannot serve as a predicate offense, the validity of Defendant's ACCA sentence depends on whether his robbery convictions supply two violent felonies to add to his extant drug offense. The pertinent robbery convictions arose under 18 Pa.C.S. § 3701, which provided, in pertinent part, as follows:

(a) Offense defined.—

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another; [or]
(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
(iii) commits or threatens immediately to commit any felony of the first or second degree;
(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or
(v) physically takes or removes property from the person of another by force however slight.

18 Pa.C.S. § 3701(a) (1991).

Defendant argues that pursuant to Mathis v. United States, 136 S. Ct. 2243 (2016), Section 3701 is indivisible, and not subject to a modified categorical approach. Even after Mathis, Courts within this Circuit have continued to follow United States v. Blair, 734 F.3d 218, 225 (3d Cir. 2013), which held that Pennsylvania's robbery statute is divisible and subject to a

---

[3] On July 11, 2017, the Government filed a Notice of Appeal in Weygandt.

modified categorical approach. See, e.g., United States v. Coffie, No. 1-663, 2017 U.S. Dist. LEXIS 126577, at *8 (E.D. Pa. Aug. 9, 2017); United States v. Stanford, No. 8-307, 2016 U.S. Dist. LEXIS 171032, at *14 (M.D. Pa. Oct. 18, 2016).

Recently, my sister court in Philadelphia concluded that Blair does not survive Mathis intact. United States v. Singleton, No. 10-578, 2017 U.S. Dist. LEXIS 64004, at *12 (E.D. Pa. Apr. 26, 2017). It noted, first, that it was undisputed that Section 3701(a)(1)(iii) "is not categorically an ACCA predicate." Id. at *20. It then found that that when a defendant is charged under all three subsections of Pennsylvania's robbery statute, the statute is indivisible. This holding, however, was accompanied by the conclusion that even when all subsections are charged, a court may look to Shepard documents to determine whether a defendant's particular convictions can be isolated to offenses that fit ACCA's force clause. Id. at **11-12.[4] In other words, the Court found that "Blair's holding remains true where a defendant was not charged under subsection (iii) or if analysis of the Shepard documents otherwise isolates his conviction to an offense with ACCA-qualifying violent elements." Id. at *22.

Whether the principles of Blair or Singleton govern, the result here is the same. Defendant asserts, and Shepard documents demonstrate, that Defendant's robbery convictions at Common Pleas Case Numbers 9403301 and 9403299 arose under either Section 3701(a)(1)(i) or (a)(1)(ii), and in neither case was he charged with a violation of (a)(1)(iii). Moreover, courts within this Circuit have repeatedly held that convictions under Sections (a)(1)(i) and (a)(1)(ii) qualify as predicate offenses under the force clause. See, e.g., Coffie, 2017 U.S. Dist. LEXIS 126577, at *11; United States v. Villella, No. 6-06, 2017 U.S. Dist. LEXIS 64052, at *19 (W.D. Pa. Apr. 27, 2017); United States v. Peppers, No. 00-336, 2016 U.S. Dist. LEXIS 168101, at *3

---

[4] In Singleton, the defendant was charged with subsections (i)-(iii) of the robbery statute, and the Court was unable to determine the subsection of conviction.

4

(M.D. Pa. Dec. 6, 2016); Harris, 2016 U.S. Dist. LEXIS 117070, at *44 (citing United States v. Dobbin, 629 F. App'x 448, 452 (3d Cir. 2015) (nonprecedential)); United States v. Maldonado, No. 10-288, 2016 U.S. Dist. LEXIS 105356, at **10, 13-14 (E.D. Pa. Aug. 9, 2016).

### b. Single Offense or Multiple Offenses

Even if his robbery convictions are qualifying predicates, Defendant argues that they do not reflect violent felonies "committed on occasions different from one another" as required by ACCA. 18 U.S.C. § 924(e)(1). Thus, he contends, they "count" as one offense, rather than two. In particular, Defendant suggests that because the robbery charges were accompanied by conspiracy charges, it is possible that the crimes could have been committed simultaneously through co-conspirators. The Government, in opposition, argues that the offenses involved different stores and victims, and because "it is impossible to be in two places at the same time, the robberies were distinct in time."

As a threshold matter, the Government contends, rather perfunctorily, that Defendant has procedurally defaulted this argument by failing to raise it on direct appeal. A petitioner's default may be excused by a showing of cause for the default, and prejudice arising from failure to consider the claim. A claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for procedural default. Reed v. Ross, 468 U.S. 1, 16 (1984). Here, the PSR identified four different predicate convictions for ACCA purposes. Defendant was sentenced in 2006, before Johnson – or its obvious, direct ancestors -- was on the horizon. At that point, therefore, Defendant was tagged with three predicate offenses, whether his robbery convictions counted as one or two. It was Johnson that rendered the argument non-frivolous. Further, prejudice is evident. Indeed, courts have "consistently ruled that cause and prejudice excuse…procedural default in the Johnson context." Mitchell v. United States, No. 17-02341,

5

2017 U.S. Dist. LEXIS 103473, at *19 (W.D. Tenn. July 5, 2017). Under the circumstances, Defendant has not procedurally defaulted his claim based on ACCA's "different occasions" requirement.

When assessing whether offenses occurred on different occasions for ACCA purposes, the "separate episode test" adopted in this Circuit requires that the criminal episodes be "distinct in time." United States v. Swan, 661 F. App'x 767, 770 (3d Cir. 2016) (citing Blair, 734 F.3d at 228-29); United States v. Chatman, 487 F. App'x 769, 771 (3d Cir. 2012). Accordingly, "[i]t is necessary to look to the nature of the crimes, the identities of the victims, and the locations. Additionally, we must ask whether the defendant had sufficient time to cease and desist or withdraw from the criminal activity." United States v. Mucha, 49 F. App'x 368, 371 (3d Cir. 2002); see also Chatman, 487 F. App'x at 771. Otherwise stated, "[a]s long as crimes are successive, and not simultaneous, they occur on different occasions for ACCA enhancement purposes." United States v. Bargeron, 435 F. App'x 892, 893-94 (11th Cir. 2011). It has been said that the "critical inquiry…is whether the offenses occurred sequentially." United States v. Fuller, 453 F. 3d 274, 278 (5th Cir. 2006). Whether prior convictions occurred on different occasions is properly determined by the sentencing court, which may rely on documents approved by Shepard v. United States, 544 U.S. 13 (2005). See United States v. Jurbala, 198 F. App'x 236, 237 (3d Cir. 2006); Blair, 734 F. 3d at 227-228 (citing Almendarez-Torres v. United States, 523 U.S. 224 (1998)); United States v. Terry, No. 10-29, 2015 U.S. Dist. LEXIS 91470, at **16-17 (W.D. Pa. July 14, 2015).

Here, according to the charging documents, the conduct underlying both of Defendant's robbery convictions occurred on the same day.[5] One robbery involved the theft of lottery proceeds from Bryant Street Lottery and the threat or infliction of serious bodily injury upon Mary Denham; the second involved the theft of currency from Court Market and the threat or infliction of serious bodily injury upon Nadazna Kholodinko. The robbery at the Bryant Street Lottery occurred "before closing," but the record identifies no time of day in relation to the Court Market robbery. The geographic locations of the Bryant Street Lottery and the Court Market are not identified in the record. Each charging document also contains a criminal conspiracy charge related to each of the two robberies. Moreover, each conspiracy Count charges that Defendant conspired with three other individuals to commit the robberies: Amber Sloan, Paul McMillan, and Robert Woods.

When considering whether crimes were sequential or simultaneous, and whether a defendant had an opportunity to make a knowing and conscious decision to engage in one offense after the other, the presence of co-conspirators can complicate the analysis. See, e.g., United States v. Linney, 819 F. 3d 747 (4th Cir. 2016). In Pennsylvania, "[o]nce the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." Commonwealth v. Murphy, 844 A. 2d 1228, 1238 (Pa. 2004). As such, when available Shepard documents do not conclusively establish sequential rather than simultaneous offenses, in a joint criminal liability context, courts have declined to find that the crimes occurred on "different occasions" for ACCA purposes. See, e.g., Fuller, 453 F. 3d at 279-80. In this case, based on the charging documents alone, it is impossible to

---

[5] The charging documents indicate that the robberies were committed on January 4, 1993 and January 4, 1994. The parties appear to agree, however, that the discrepancy is the result of a typographical error, and that both robberies occurred on the same day.

7

conclusively determine whether Defendant was held legally responsible for the simultaneous acts of co-conspirators, and lacked the opportunity to cease and desist or withdraw prior to the second robbery, or whether he was convicted for his direct participation in sequential or successive criminal acts.

The presentence report ("PSR") in this case, however, to which Defendant did not object,[6] potentially augments the facts. As to one robbery, the PSR reports that "[a]ccording to the criminal complaint affidavit, the victim advised that three men entered the Bryant Street Lottery store," and "[t]he participants in the robbery were later identified" as Defendant, McMillan, and Woods. As to the other robbery, the PSR reports that "the victim advised that three persons entered the Court Market store," and "[t]he participants in the robbery were later identified" as Defendant, McMillan, and Sloan. No source for the latter information is named. These recitations could belie the possibility of two robberies that occurred simultaneously or in Defendant's absence; if Defendant was physically present at both robberies, they had to have been committed in succession. In that case, Defendant would likely have had the opportunity to cease or withdraw from criminal activity prior to the second robbery. If this part of the PSR is accepted as fact, the robberies – targeting different establishments and victims -- would probably "count" as two predicate offenses, committed on different occasions for ACCA purposes.

The issue, then, is the extent to which this Court may rely on the PSR's recitation. Prior to the Supreme Court's decisions in Mathis and Descamps v. United States, 133 S. Ct. 2276 (2013), our Court of Appeals suggested that it is appropriate to rely on the PSR in the different occasions context: "For the reasons expressed by our sister Circuit in United States v. Thompson, 421 F.3d 278, 284-287 (4th Cir. 2005), we hold that it was proper for the District Court, relying on the PSR, to make the 'different occasions' determination on its own." United

---

[6] See Position of Defendant With Respect to Sentencing Factors, Docket No. 57.

States v. Jurbala, 198 F. App'x 236, 237 (3d Cir. 2006). In the portion of Thompson to which Jurbala cited, the Court of Appeals for the Fourth Circuit suggested that prohibited judicial factfinding precludes "speculation regarding facts extraneous to the prior conviction," but not "recourse only to data normally found in conclusive judicial records, such as the date and location of an offense." Thompson, 421 F. 3d at 286.[7] It noted that "[t]he line between the facts that are inherent in a conviction and facts that are about a conviction is a common-sensical one." Id. at 285. It noted, as well, that the trial judge in the matter at hand could rely on the PSR because it bore "the earmarks of derivation from Shepard-approved sources such as indictments and state-court judgments from [defendant's] prior convictions." Id. at 285.

Whether these principles remain viable in today's jurisprudential landscape is under question.[8] Assuming that they survive, to make a "different occasions" finding in this particular case would require an unwarranted extension of those principles. There is an essential difference between relying on a fact such as the date of a crime, or even a "non-inherent" fact manifestly derived from a Shepard-approved source, and looking to a decidedly non-elemental, extraneous, and unsupported fact, and therefrom extrapolating a factual scenario to support a sentencing enhancement. Pennsylvania law would hold Defendant legally responsible for all acts of a co-conspirator; his presence at either robbery location cannot be seen as "inherent" in the conviction; and Defendant did not necessarily plead guilty to the facts recounted in the PSR.

---

[7] Jurbala cited Thompson while addressing the propriety of a judge, as opposed to a jury, making the "different occasions" determination. In doing so, the Jurbala Court pointed to additional language in Thompson: "explaining that 'occasions' are 'those predicate offenses that can be isolated with a beginning and an end-ones that constitute an occurrence unto themselves," and advising District Courts to make this determination based on factors "such as different geographic locations and victims.'" Jurbala, 198 F. App'x at 237 (quoting Thompson, 421 F. 3d at 285). While this limited reference alone does not signify a wholesale adoption of Thompson, it does provide this Court with guidance.

[8] The Court of Appeals for the Fourth Circuit opined that the "different occasions" question is altogether different from those at issue in Descamps and Mathis, and that courts needn't be constrained by those cases; it left the viability of Thompson – which it recognized has been described as an "outlier" -- as an issue for another day. United States v. Span, 789 F.3d 320, 332 (4th Cir. 2015) (citing United States v. Aviles-Solarzano, 623 F.3d 470, 474 (7th Cir. 2010)).

9

Instead, the fact that Defendant was "later identified" as being present at both robbery locations need neither have been found by a jury nor admitted by Defendant. Moreover, the PSR's suggestion that Defendant was present at both robberies cannot be traced to Shepard-approved documents – for one robbery, no source is indicated; for the other, the PSR references a criminal complaint affidavit. Even if the criminal complaint affidavit sufficed, it would lend only one narrative the earmark of an approved derivation.

In sum, in this particular and rather uncommon scenario – a factual recitation in the PSR that lacks explicit derivation from Shepard-approved sources; non-elemental, extraneous facts that would be knitted into a timeline decisive of an enhanced sentence; charging and plea documents that are not dispositive of the timing of offense conduct; and two robbery charges, occurring on the same day and both related to parallel conspiracy charges– I am persuaded that relying on the PSR to affirm an ACCA sentence would run afoul of essential principles underlying pertinent Supreme Court jurisprudence. In other words, it would go beyond looking only to data normally found in conclusive judicial records, and extend judicial factfinding into the realm of underlying conduct. "[W]hatever [a defendant] says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment." Descamps, 133 S. Ct. at 2289. Therefore, "an ambiguous record regarding whether a defendant actually had the opportunity 'to cease and desist or withdraw from his criminal activity' does not suffice to support the ACCA enhancement." Kirkland v. United States, 687 F.3d 878, 895 (7th Cir. 2012). Thus, Defendant's robbery charges must be treated as a single offense. See, e.g., Toomer, 2017 U.S. Dist. LEXIS 63996, at *11.

Given its implications here, United States v. Siegel, 477 F.3d 87, 93 (3d Cir. 2007), merits separate mention. Post-Descamps, citing to Siegel, our Court of Appeals reaffirmed that

an unobjected-to PSR can be a Shepard document within this Circuit. United States v. Doe, 810 F.3d 132, 147 (3d Cir. 2015). Although not all Circuit Courts agree that a PSR is Shepard-approved, ours apparently intended that this aspect of Siegel survive Descamps. This conclusion is not obviously inconsistent with limited use of the PSR as endorsed in Thompson and similar cases. Siegel went further: the Court looked to the PSR's factual account of the offense conduct – which described the defendant physically restraining and forcing his victim – to determine that the offense was a crime of violence for purposes of U.S.S.G. § 4B1.2. Siegel, 477 F. 3d at 93. More than one court has opined that this part of Siegel was abrogated by Descamps and Mathis. United States v. Ballard, No. 03-810, 2017 U.S. Dist. LEXIS 105766, at **8-9 (E.D. Pa. July 7, 2017); Singleton, 2017 U.S. Dist. LEXIS 64004, at *27, n. 10.

The "different occasions" requirement goes to the heart of ACCA's purpose, and its application implicates grave constitutional concerns. The "different occasions" language "plainly expresse[d] that concept of what is meant by a 'career criminal,' that is, a person who over the course of time commits three or more of the enumerated kinds of felonies and is convicted therefor…[the language is to] insure that its rigorous sentencing provisions apply only as intended in cases meriting such strict punishment." 134 Cong. Rec. S17, 360 (daily ed. Nov. 10, 1988) (statement of Sen. Joseph Biden). Further, "only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction." Mathis, 136 S. Ct. at 2252. Thus, rejecting a focus on non-elemental facts avoids unfairness to defendants, who – particularly at a plea hearing -- might not contest what does not matter under the law. Id. at 53. Potential inaccuracies in the record "should not come back to haunt the defendant many years down the road by triggering a lengthy mandatory sentence." Id. at 2253.

This matter touches on the intersection of several areas of law – involving the vital principles underlying cases such as Shepard, Descamps, Mathis, and Apprendi v. New Jersey, 530 U.S. 466 (2000) -- which are "constantly evolving and 'not always very logical' …" Kirkland, 687 F. 3d at 883. In this particular case, limiting the permissible extent of the Court's reliance on the factual account in the PSR ensures fidelity to the Constitution and the statute, as well as to precepts of logic and fairness.

## CONCLUSION

In sum, the Court is unable to conclude that Defendant's ACCA sentence was supported by the requisite number of predicate offenses. Defendant's Motion will be granted, and a resentencing hearing scheduled. An appropriate Order follows.

BY THE COURT:


/s/Donetta W. Ambrose

_____

Donetta W. Ambrose

Senior Judge, U.S. District Court


Dated: _____8/31/17_____, 2017

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR No. 6-97 |
| | ) CV No. 16-795 |
| DEION LAMONT WILSON | ) |

**ORDER**

AND NOW, this 31st day of August, 2017, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion to Vacate [88] is GRANTED. This matter is scheduled for resentencing on September 28, 2017, at 10:00 AM in Courtroom 3B before the undersigned.

BY THE COURT:

/s/Donetta W. Ambrose

_____

Donetta W. Ambrose

Senior Judge, U.S. District Court

13